**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jose Manuel LAMAS,
Defendant–Appellee.**

No. 90–2593.

United States Court of Appeals,
Fifth Circuit.

May 8, 1991.

1100

Kathlyn G. Snyder, Paula Offenhauser, John Grasty Crews, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellant.

Ernesto Gamez, Jr., Brownsville, Tex., for defendant-appellee.

Before GOLDBERG, HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The district court suppressed certain evidence obtained in a search of defendant's home, a search that had relied upon defendant's later invalidated consent. The government contends that without the consent the evidence would inevitably have been discovered by officers armed with a valid search warrant. The district court was unpersuaded and held that, despite the fact that the officers had probable cause to search the house and that at the time of the consent one officer had left to obtain a search warrant, the inevitable-discovery exception to the exclusionary rule did not apply. We disagree and therefore reverse.

I

An undercover agent met with Danny Echavarria on the evening of August 9, 1988, to arrange the purchase of eight ounces of cocaine. After the initial meeting, Echavarria left to get the drugs. He was joined by Juan Rios Lamas, the defendant's cousin. The two men stopped by the house of Jose Manuel Lamas, the defendant-appellee, before continuing on to deliver one ounce of cocaine to the undercover agent. The agent took the cocaine and paid the two men with currency that had been photocopied for identification. At that point, Juan Rios Lamas and Echavarria went back to Jose Manuel Lamas's house and returned with the additional seven ounces of cocaine to sell to the agent. When they arrived, officers arrested Juan Rios Lamas, but Echavarria escaped.

Because Echavarria was at large, the police decided to secure Jose Manuel Lamas's house immediately to prevent the destruction or removal of evidence. The officers entered without a warrant and conducted a cursory protective search for weapons and other persons. They found one firearm, and one person surrendered a handgun. During this protective sweep, Officer Garcia told Jose Lamas that if the police obtained a search warrant for the house and discovered cocaine the officers would arrest both Lamas and his wife, as they both were in possession of the house.

Officer Garcia also told Lamas that if he and his wife were arrested the police would have to call either "child welfare" or some of Lamas's relatives to have them take care of Lamas's children. At some point while Officer Garcia was talking with Lamas but before Lamas consented to the search, Officer DuBois left to prepare an affidavit to obtain a search warrant for the house. As DuBois was walking to his car, he was stopped by another officer, who told him that Lamas had consented to a search of the house. Officer DuBois removed a consent-to-search form from his car, went back into the house, and read the consent form to Lamas in Spanish. Lamas signed the form and then disclosed to the officers the location of, among other things, three assault rifles, two shotguns, twelve packets of cocaine wrapped in the same manner as the cocaine sold to the undercover agent, a small electronic scale, and $1,000 of the $1,300 that the undercover agent had exchanged for the cocaine.

In August 1989 Jose Manuel Lamas was indicted on two counts of federal drug-law violations: conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C.A. §§ 841(a)(1) and 841(b)(1)(B); and possession with intent to distribute cocaine, in violation of 18 U.S.C.A. § 2 and 21 U.S.C.A. §§ 841(a)(1) and 841(b)(1)(B). Lamas moved to suppress all the evidence seized from his house during the search on August 9, 1988. After a hearing on the motion, the district court entered written findings of fact and conclusions of law and ordered the evidence suppressed on the ground that Lamas's consent to the search was involuntary. The court found that exigent circumstances justified the officers' initial entry into the house. The court also found that the officers, recognizing the limited scope of the permissible protective search, "stopped and sent several officers to obtain a search warrant while several other officers talked to the Defendant about signing a consent form." The court further found that the cocaine was not discovered during the initial protective search, but during the search conducted after Lamas signed the consent form. Finding that Lamas's consent was involun-

tary, the court ordered that the evidence be suppressed.

The government filed a notice of appeal, followed by a motion to withdraw the appeal and a motion for reconsideration. The court granted the motion to withdraw the appeal and entered supplemental findings of fact and conclusions of law, denying the government's motion for reconsideration. In this motion for reconsideration, the government did not contest the district court's finding that Lamas's consent was involuntary. Rather, the government argued that the evidence was admissible under the inevitable-discovery exception to the exclusionary rule. In denying this motion, the court held that the government did not meet the requirements of the inevitable-discovery exception:

> For the "inevitable discovery" exception to the exclusionary rule to apply, the government must prove by a preponderance of the evidence (1) that there is a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct and (2) that the government was actively pursuing a substantial alternative line of investigation. *United States v. Cherry*, 759 F.2d 1196, 1205–1206 (5th Cir.1985).

> In the current case, the government has not established either requirement. Although at the time of the search, law enforcement officials had sufficient probable cause to obtain a warrant authorizing the search of Defendant's home, the Government has not proven that they had taken any significant steps toward obtaining such a search warrant. Likewise, the Government has not established that there was a reasonable probability that the cocaine would have been discovered by lawful means but for the police misconduct.

> In short, the Court finds that the "inevitable discovery" exception does not apply.

After the court denied the motion, the government filed another notice of appeal, followed by another motion to withdraw the appeal and a second motion for recon-

sideration. The court denied the second motion for reconsideration, and this appeal followed. We treat the third notice of appeal as a motion to reinstate the second notice of appeal. *See* Fifth Cir.Loc.R. 27.-1.14. On appeal the government argues that the district court erred in concluding that the inevitable-discovery exception to the exclusionary rule does not apply.

"In reviewing the grant of a motion to suppress, 'the trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law....' " *United States v. Ervin*, 907 F.2d 1534, 1537 (5th Cir.1990) (citations omitted). "[T]he evidence must be viewed in the light most favorable to the party prevailing below, except where such a view is either not consistent with the trial court's findings or is clearly erroneous considering the evidence as a whole." *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir.1984) (footnote omitted). Questions of law are reviewed *de novo. United States v. Muniz–Melchor*, 894 F.2d 1430, 1433 (5th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). We find no clear error in the district court's factual findings; however, we disagree with the court's legal conclusions and therefore reverse.

## II

■ In concluding that the inevitable-discovery rule does not apply, the district court relied on *United States v. Cherry*, 759 F.2d 1196, 1205–06 (5th Cir.1985), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987). In *Cherry* this court held that for the inevitable-discovery exception to apply the government must, by a preponderance of the evidence, establish (1) a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of the police misconduct and (2) that the government was actively pursuing a "substantial alternate line of investigation at the time of the constitutional violation." *Id. Cherry* relied on *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) and *United States v. Brookins*, 614 F.2d 1037 (5th

Cir.1980). *Williams* reiterated the "core rationale" underlying the exclusionary rule: the deterence of police misconduct. 104 S.Ct. at 2508. The corollary of this principle is that the prosecution must not be put in a better position as a result of police illegality. *Id.* The competing societal interest in convicting guilty persons, however, requires that the prosecution not be put in a worse position by police misconduct. These interests are balanced in the independent-source and inevitable-discovery exceptions to the exclusionary rule. *Id.* at 2508–09. The Court also noted, however, that inevitable discovery cannot rest upon speculation, but must be supported by historical facts that can be verified or impeached. *Id.* at 2509 n. 5. In *Cherry* we applied *Williams* in holding that *availability* of a search warrant did not alone establish inevitable discovery. *Cherry*, 759 F.2d at 1205 n. 10. *Cherry*'s two-part test followed.

■ The district court found the following facts: that, independent of the search conducted pursuant to the consent, the officers had probable cause to search Lamas's house and thus could have obtained a search warrant; that the officers entered the house for the limited purpose of securing it and its occupants until a warrant could be obtained; and that, before Lamas indicated he would sign the form consenting to the search, one of the officers had left the house and was walking toward his car with the intent of leaving to get a search warrant when, being told of Lamas's consent, he stopped and went back inside the house. Based on these facts the court drew the following legal conclusion: "[T]he Government has not proven that [the officers] had taken any significant steps toward obtaining ... a search warrant. Likewise, the government has not established that there was a reasonable probability that the cocaine would have been discovered by lawful means but for the police misconduct."

The district court held that it was not enough that an officer had left to get a search warrant, that this is an insufficient showing of inevitability. We cannot agree.

In *Cherry*, FBI agents found the murder weapon behind a ceiling tile in the defendant's living quarters. The search was found to have been tainted by defendant's illegally obtained confession. Nevertheless, the district court held that the pistol, bullets, and pistol case found behind the tile were admissible under the inevitable-discovery exception because, as of the time of the illegal confession, FBI agents had more than enough probable cause to obtain a search warrant for the area and had good reason to search behind the same ceiling tile behind which the evidence was found. *Cherry*, 759 F.2d at 1200–02, 1206. We reversed on the ground that there was no evidence that, at the time of the warrantless search, the officers had begun actively to pursue a warrant:

> No finding was made ... that the agents were actively pursuing a warranted means of searching the ceiling at the time the misconduct occurred. In fact, uncontradicted testimony elicited at the second suppression hearing makes clear that, at the time Cherry's barracks and ceiling were searched for the second time, the agents had not even begun taking notes for the purpose of drafting an affidavit, a necessary prerequisite to the procurement of a warrant. *Thus, because at the time of the warrantless search the agents could have obtained a warrant but had made no effort to do so, we find under* Brookins *that the district court erred in holding the evidence admissible under the inevitable discovery exception.*

*Id.* at 1206 (emphasis added) (footnote omitted).

Here the facts are significantly different from those in *Cherry*. The district court found, and record testimony supports, that the officers initially entered Lamas's house solely for the purpose of securing it until a warrant could be obtained, that the officers told Mr. Lamas that he and his wife would have to be detained while the officers left to get a warrant, and that, before Lamas agreed to sign a consent form, an officer in fact left the house to get a warrant.[1] In contradistinction, the evidence in *Cherry* indicated that at the time of the warrantless search the agents "had made no effort" to secure a warrant.

Lamas points out that, as in *Cherry*, at the time of the illegal search no officer had drafted an affidavit to the magistrate in support of a warrant. Nor had any officer yet called the magistrate's office. *Cherry*, however, did not mechanically particularize the steps prerequisite to the application of the inevitable-discovery rule. It is not uncommon for officers to contend that if not for some intervening event—such as a confession or a consent to search—they would have gotten a valid search warrant and would have discovered the evidence legally in the absence of the illegal search. In such circumstances, neither *Cherry* nor any other case we are aware of draws a line of inevitability at the point of drafting the affidavit to the magistrate or of calling the magistrate's office for the inevitable-discovery exception to apply. *See, e.g., United States v. Raborn*, 872 F.2d 589, 595 (5th Cir.1989); *United States v. Medina*, 887 F.2d 528, 533 n. 7 (5th Cir.1989); and *Wicker v. McCotter*, 783 F.2d 487, 498 (5th Cir.), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986).

In addition to arguing that both parts of the *Cherry* test are met in this case—which we are persuaded is true—the government argues, alternatively, that at least the active-pursuit requirement has been vitiated by a later decision of the Supreme Court as well as by decisions of this court. The government argues first that a footnote in

---

1. Q: And what happened then?
A: As we finished securing the house, I told Sgt. Cabler and Sgt. Garcia that I was going to go and prepare an affidavit for a search warrant for the house.
Q: Did you leave to go get a search warrant for the house?
A: I was going out to my vehicle. And as I was, I was stopped by the sergeants and told that the Defendant had agreed to give a voluntary consent for the premises to be searched.
Q: So what did you do then?
A: I extracted a consent to search form from my vehicle and went back in the house.
Testimony of Officer Joseph DuBois on Direct Examination, Record Vol. 4, at 12–13.

the Supreme Court's decision in *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), undermines the rationale stated in *Cherry* for continuing to impose the active-pursuit requirement of *Brookins*. In a footnote in *Cherry* we stated that *Williams* supported our position, because

> the Supreme Court stated in *Williams* that the inevitable discovery exception 'involves no speculative elements but focuses on demonstrated historical facts.' 104 S.Ct. at 2510 n. 5. This comment implies that the alternate means of obtaining the evidence must at least be in existence and, at least to some degree, imminent, if yet unrealized. If the inevitable discovery exception can be applied only on the basis of the police officer's mere intention to use legal means subsequently, the focus of the inquiry would hardly be on historical fact.

*Cherry*, 759 F.2d at 1205 n. 10.[2] The government now contends that in a footnote in Justice Scalia's majority opinion in *Murray*, a case involving the independent-source exception to the exclusionary rule, the Supreme Court rejected the historical-fact requirement mentioned in *Williams. Murray*, 108 S.Ct. at 2534 n. 2.

The government further argues that Fifth Circuit cases after *Cherry* have not required a showing of active pursuit of an alternate line, but rather have relied solely on the first part of the *Cherry* test—a reasonable probability of discovery. *E.g., United States v. Medina*, 887 F.2d 528, 533 n. 7 (5th Cir.1989); *United States v. Namer*, 835 F.2d 1084, 1088 (5th Cir.), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988); *Wicker v. McCotter*, 783 F.2d 487, 498 (5th Cir.1986). Neither *Murray* nor any of our cases, however, disputes that a showing of active pursuit of an alternate line of investigation together with a showing of reasonable probability of discovery—as is present in this case—is *sufficient* to sustain the application of the inevitable-discovery exception. Whether this active-pursuit element from *Cherry* is

still *necessary* to implicate the inevitable-discovery rule must await the case that turns on that question.

We are persuaded that the government has, by a preponderance of the evidence, demonstrated that the officers—absent Lamas's consent—would have discovered the damning evidence pursuant to a search warrant and that the officers had affirmatively turned in that direction before the unlawful consent was obtained. The district court's order suppressing the evidence of the search is reversed, and the case is remanded to the trial court.

REVERSED and REMANDED.

---

**2.** We note that, in this case, the government has presented "demonstrated historical facts": the testimony of Officers DuBois and Garcia that Officer DuBois had in fact left to get a warrant.