UNITED STATES of America,
Plaintiff–Appellant,

v.

Juan IBARRA, John Joe Guerrero, and
Robert Franklin Chambers,
Defendants–Appellees.

No. 91–2922.

United States Court of Appeals,
Fifth Circuit.

Nov. 26, 1991.

Suggestion for Rehearing En Banc
Granted Feb. 21, 1992.

Paula C. Offenhauser, Asst. U.S. Atty., Ronald G. Woods, U.S. Atty., Bertram A. Isaacs, Asst. U.S. Atty., Houston, Tex., Doug Wilson, Atty., U.S. Dept. of Justice, Washington, D.C., for U.S.

Mike DeGeurin, Houston, Tex., for Ibarra.

Lewis Dickson, Houston, Tex., for Chambers.

Robert Scardino, Houston, Tex., for Guerrero.

Before WILLIAMS, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

DUHÉ, Circuit Judge.

The United States appeals the district court order suppressing evidence seized pursuant to a consent search. Appellees–Cross Appellants, the criminal defendants Ibarra and Guerrero, seek review of the district court's refusal to suppress other evidence seized as a result of their arrests. We reverse in part, dismiss in part, and remand.

Facts

Acting on a tip that drug trafficking and money laundering were taking place there, Houston police set up surveillance of a house at 7663 El Rancho. They watched as Appellee Guerrero entered the house and later left with Appellee Ibarra in separate cars. As the police followed them, Ibarra and Guerrero engaged in countersurveillance, including driving at erratic rates of speed, weaving through traffic, and entering and exiting freeways at random. The two cars separated, but both eventually arrived at 215 Ashby Street. After visiting that house for approximately a half hour, Ibarra and Guerrero left in the same car. The police temporarily lost sight of this car. When they found it, Guerrero was driving and Ibarra was on foot several blocks away. The police stopped Guerrero who told them he had a gun in his car. A search of the car revealed a nine millimeter handgun. The officers arrested Guerrero and signalled to the officers following Ibarra to stop him. The officers searched Ibarra and found on him records of drug transactions. Both Ibarra and Guerrero denied any knowledge of the Ashby Street house.

Later that night, officers went to the Ashby Street house. Appellee Chambers answered the door and, after the officers asked to come in, allowed them to enter.

The officers told Chambers of their investigation. Chambers told them that he had been living in the house for two weeks. The officers asked if they could search the house and garage for evidence of money laundering and drug trafficking, and Chambers agreed. Chambers, however, refused to sign a consent to search form, stating that he did not own the house.

The Ashby Street house consisted of a bedroom with a closet, a kitchen, a living room, a bathroom, and an attic. On their first time through the house, the officers found evidence of money laundering[1] in the kitchen and a gun in the bedroom. One officer then went outside to see if the house had attic or cellar space. Noting that it had an attic, he returned inside to search for an entrance. One was found, boarded up, in the bedroom closet. The police then used the handle of a sledgehammer to knock out the boards. Upon entering the attic, they found nearly $1,000,000 in cash, ledgers, and a money counting machine.

Appellee Chambers moved to suppress the evidence found in the Ashby Street house and Appellees Ibarra and Guerrero adopted his motion. Ibarra and Guerrero also moved to suppress the evidence found incident to their arrests. The district court granted Appellees' motion regarding the Ashby Street evidence, but denied Ibarra and Guerrero's request with respect to evidence gained from their arrests.

From the bench the district judge gave the reasons for his ruling. He indicated that Chambers gave a "reasonably knowing and appropriate" consent to search the house and garage. Though the judge believed the search of the rooms and the garage of the house to be reasonable, he found that the search of the attic was not, stating that by the time the police found the attic entrance, Chambers was constructively under arrest. The judge further stated that having found evidence of money laundering, probable cause was clearly established and the intervention of a magistrate was necessary to determine the propriety of entering the attic. Though the

judge specifically declined to rule on whether Guerrero and Ibarra had standing to contest the evidence found at the house, he suppressed it "for all purposes." With respect to the other evidence, the judge found that Ibarra and Guerrero's arrests and the searches incident to them had been reasonable.

The district judge later submitted written reasons for suppressing the evidence found on Ashby Street. He found that Chambers's consent to search the house had been free and voluntary, but could not have included consent to structurally dismantle the secured closet ceiling by use of a sledgehammer. The judge also concluded that the Due Process Clause called for suppression, finding that the conduct of the officers was "outrageous" and qualified "as the sort of arbitrary and capricious police conduct that shocks [a court's] sense of justice and fundamental fair play." To allow the evidence to be used against Ibarra and Guerrero, the judge wrote, would reduce the exclusionary rule's desired deterrence of unconstitutional police practices "to an impotent nullity."

Standing

■ Though the district judge declined to decide expressly if Ibarra and Guerrero had standing to contest the search of the Ashby Street house, by excluding the evidence found there for all purposes, he implicitly concluded that they did. Whether a defendant has standing to contest an allegedly illegal search is a question of law. *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037 (5th Cir.1990). After de novo review, we find the implicit standing conclusion of the district court flawed.

■ Ibarra and Guerrero may not assert the exclusionary rule unless their Fourth Amendment rights have been violated. *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). To establish a Fourth Amendment violation, they must show that they had a legitimate expectation of privacy in the area searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980);

---

1. The evidence included a bag of rubberbands and torn pieces of paper, items typically used by money launderers to divide and label large amounts of cash.

*United States v. Antone,* 753 F.2d 1301, 1306 (5th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). In assessing whether a legitimate expectation of privacy exists, we examine several factors including:

> whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy and whether he was legitimately on the premises.

*United States v. Haydel,* 649 F.2d 1152, 1155 (5th Cir. Unit A July 1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982).

■ Neither Ibarra nor Guerrero has shown an expectation of privacy in the Ashby Street house. Neither owned the house, nor did either lease it or live in it. Neither has shown that he maintained any control over the premises nor even a subjective expectation of privacy in the home or its contents. Indeed, both men denied any knowledge of the house when they were arrested. Without such showings, neither has standing to contest the search. Chambers, in contrast, resided in the house, exerted control over it, and has standing to object to the submission of evidence found there.

Chambers' Claim

■ When reviewing a district court's suppression ruling, we accept the trial judge's factual findings unless they are "clearly erroneous or influenced by an incorrect view of the law." *United States v. Lanford,* 838 F.2d 1351, 1354 (5th Cir. 1988). The district court's ultimate conclusions of Fourth Amendment reasonableness, however, are subject to de novo review. *United States v. Colin,* 928 F.2d 676, 678 (5th Cir.1991).

■ The district court's finding that the police structurally dismantled the attic entrance is clearly erroneous. Nothing in the record suggests that the police disturbed the structural integrity of the Ashby Street house. To the contrary, the record indicates that the house was built with an attic space and that a passageway to this space was located in the bedroom closet. Though the entrance was covered by boards, one officer testified that through them he could see what appeared to be a bag. The police did not alter the frame of the house; they merely removed a barrier blocking a visible, pre-existing passageway.

The removal of such a barrier does not constitute the type of brutal conduct that implicates the Due Process Clause. *See Rochin v. California,* 342 U.S. 165, 173–73, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952) (holding that forcible extraction of defendant's stomach contents violates Due Process Clause). The Due Process Clause is violated only in the rarest and most outrageous circumstances, those which shock our universal sense of justice. *United States v. Arteaga,* 807 F.2d 424, 426 (5th Cir.1986); *United States v. Yater,* 756 F.2d 1058, 1066 (5th Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). This is not one of those unusual instances.

■ Nor does entrance to the attic constitute a Fourth Amendment violation. The police may search without a warrant when they have consent to do so from a person with authority to give consent. *Illinois v. Rodriguez,* — U.S. —, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990). Chambers, though not the owner of the house, resided there as its sole occupant and thus had authority to consent to the search. The district court found, and we agree, that his consent was voluntary. Unlike the district court, however, we find that the consent to search extended to the attic.

Whether Chambers agreed to a search of the attic is a question of objective reasonableness: would "the typical reasonable person" understand the consent to extend to the attic? *Florida v. Jimeno,* — U.S. —, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991).[2] Chambers consented to a general

---

2. Such a question of objective reasonableness is a question of law subject to de novo review.

*See United States v. Harrison,* 918 F.2d 469 (5th Cir.1990) (reasonableness of investigatory stop

search of the premises for evidence of drug trafficking and money laundering. He did not limit the search in any way, at any time, though he was present throughout its duration. We find that an objective onlooker could understand this consent to extend to all integral parts of the house—closets, attic, and basement included.[3]

Having consented to a search of the entire house, Chambers no longer held a reasonable expectation of privacy in any of its compartments. That entry to one chamber was difficult does not alter this conclusion. The Supreme Court has stated that "a lawful search extends to the entire area in which an object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 819–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982).

Appellee argues that a general consent to search a house does not permit police to demolish access into a chamber whose entry was not reasonably included within the consent. We agree. At least one circuit court has held the same with respect to automobile searches. *See United States v. Strickland*, 902 F.2d 937 (11th Cir.1990) (consent to search entire car could not reasonably be construed to permit police to slash spare tire within automobile). But in the instant case, the police did not enter an area that could not reasonably be understood to be within the bounds of consent. Nor did they create an otherwise nonexistent opening into such an area.

Chambers also contends that dictum in the recent *Jimeno* opinion dictates a decision in his favor. The facts of *Jimeno*, however, are inapposite. In *Jimeno* the Supreme Court suggested that consent to search a car trunk might not reasonably be understood to permit the police to open a locked briefcase within the trunk. *Jimeno*, 111 S.Ct. at 1804. Our holding does not extend to the situation in which a locked container—an entity independent of the compartment in question—is found, and opened, during an otherwise permissible search.[4] Today we face only the situation in which the police, in attempting to enter an area reasonably understood to be within the scope of the consent, forcibly removed a barrier to the existing passageway. Because Chambers, having consented to a limitless search of the house, relinquished his expectation of privacy in the attic, and because other means of access were unavailable, we hold that the police conduct in this case was reasonable.

Cross–Appeal

The district court denied Ibarra and Guerrero's motion to suppress evidence seized as a result of their arrests. We need not address the propriety of this ruling because appeals may not be taken from the denial of pre-trial motions to suppress evidence. *United States v. Martin*, 682 F.2d 506 (5th Cir.), *cert. denied*, 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982). We therefore dismiss this claim. The judgment of the district court suppressing the Ashby Street evidence is REVERSED and this matter is REMANDED to the district court for further proceedings.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

Although I concur with every other part of the majority's opinion, I cannot agree that Chambers' general consent to search the home he was occupying extended to the use of a sledgehammer to break a securely-boarded attic entranceway.

The district court "firmly and without hesitation [found] that [Chambers' consent] could not reasonably have been interpreted by these agents to have included a structural dismantling of the secured closet ceil-

---

is a conclusion of law); *United States v. Tedford*, 875 F.2d 446, 448–49 (5th Cir.1989) (objective reasonable reliance on search warrant is a question of law).

3. One officer testified that this consent would authorize him to chop open the walls with a fire ax or dig up the foundations with a backhoe. This subjective belief evinces a terrible misunderstanding of the reasonable bounds of the consent.

4. Other circuits have addressed similar situations. *See, e.g., United States v. Lechuga*, 925 F.2d 1035 (7th Cir.1991) (holding that search of suitcase inside closet was permissible pursuant to general consent to search apartment); *United States v. Sealey*, 830 F.2d 1028 (9th Cir.1987) (holding that search of travel bag in bedroom where gun thought to be located was permissible). Neither of these cases, however, indicates whether or not the containers were locked.

ing-attic floor by use of a sledge hammering technique." Findings of Fact and Conclusions of Law of the Defense Motions to Suppress Evidence, in Record Excerpt, *United States v. Juan Ibarra, John Joe Guerrero, and Robert Franklin Chambers*, No. 91–2922 (5th Cir. filed Sept. 9, 1991).

It is well-established that we review findings of fact on such a motion to suppress under the clearly erroneous standard: " 'the trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law....' " *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir.1991), *quoting United States v. Ervin*, 907 F.2d 1534, 1537 (5th Cir.1990); *see also United States v. Colin*, 928 F.2d 676, 677–78 (5th Cir. 1991); *United States v. Lanford*, 838 F.2d 1351, 1354 (5th Cir.1988). We review questions of law—i.e., what constitutes "reasonableness" in the case before us—de novo. *See Lamas*, 930 F.2d at 1102; *United States v. Muniz–Melchor*, 894 F.2d 1430, 1433–34 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).

The district court's finding that the entrance to the attic was *securely* boarded is not clearly erroneous; it is a finding supported by the Record on Appeal.[1] The same is true regarding the district court's finding that, "[a]ssuming, without deciding, that conventional access to an attic may have been included within such a general consent, ... it could not reasonably have been interpreted by these agents to have included a structural dismantling of the secured closet ceiling-attic floor by use of a sledge[-]hammering technique." Record at tab 4, p. 8 (Findings of Fact and Conclusions of Law on the Defense Motions to Suppress Evidence).[2]

When general consent to search a dwelling is given, coupled with subsequent silence, how far is it reasonable to assume such consent extends?—this is the core question of law.[3] Conscious of the district court's factual findings and this court's standard of review, I cannot join the majority in holding that it is objectively reasonable[4] for law enforcement officers to as-

---

**1.** *See, e.g.,* Record on Appeal at 16, *United States of America v. Juan Ibarra, John Joe Guerrero, and Robert Franklin Chambers*, No. 91–2922 (5th Cir. filed Sept. 9, 1991) ["Record"] (*direct examination of special agent Nigel Brooks) (emphasis added):

Do you recall either from your observations or what he may have told you concerning his discovery of that access to the attic?
A. Yes, I do.
Q. Would you tell the Court about that?
A. He found an access to the attic in a closet in the bedroom, and *it appeared to have been boarded up fairly securely.*

**2.** In light of the fact that the boards were securely fastened, this lack-of-consent finding is supported by the fact that no effort was made to obtain Chambers' specific consent before, even though Chambers was sitting on a couch in the living room while the agents were breaking through boards in the bedroom closet:

—Record at 33 (cross-examination of agent Nigel Brooks):
Q. When you found the—by the way, no one ever specifically asked Mr. Chambers, if it was okay, if they took a sledgehammer to the attic and knocked the boards out and went up in the attic, did they?
A. No.

—Record at 71–72 (cross-examination of officer Tony Trumps):
Q. And I gather if nobody to your knowledge ever specifically mentioned or requested of Mr. Chambers if it was okay to go in the attic, obviously, nobody asked Mr. Chambers if it was okay to take a sledgehammer and physically knock boards away from the ceiling and clear the way to gain access to the attic, correct?
A. I don't believe that was a specific request, no.
In fact, as perceived by the district court, Chambers' general consent was cushioned (if not limited) by hesitation. *See* Record at 76–77 (recross of Trumps) (emphasis added):
THE COURT: When you talked to Defendant Chambers, and he indicated that he *didn't own the house* and he *didn't want to sign this paper*, but you obtained an oral consent from him, I take it that you relied on that *oral* consent and, in fact, acted on it?
THE WITNESS: Yes, sir.

**3.** It should be noted that "[t]he government has the burden of proving voluntary consent by clear and convincing evidence." *Muniz–Melchor*, 894 F.2d at 1433; *United States v. Gonzales*, 842 F.2d 748, 754 (5th Cir.1988).

**4.** The Supreme Court has held that the Fourth Amendment standard for measuring the scope

sume that a general consent to search extends to picking up a sledgehammer and breaking an entrance securely boarded—especially when specific consent[5] or a search warrant may have been easily procured.[6]

Today a general consent to search invites officers to sledge-hammer through a securely-boarded attic entrance. Tomorrow?[7] Although I join the majority's implicit revulsion in suppressing evidence probative of Chambers' guilt,[8] it is not for this court to allow that sledgehammer to break through the limits of the Fourth Amendment.

Accordingly, I CONCUR in part and respectfully DISSENT in part.

## ON PETITIONS FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

Feb. 21, 1992.

Before POLITZ, Chief Judge, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, E. GARZA and DeMOSS, Circuit Judges.

**BY THE COURT:**

A member of the Court in active service having requested a poll on the suggestion for rehearing en banc filed on behalf of appellant Robert Franklin Chambers and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause as to Robert Franklin Chambers' case shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

The Court voted to hear en banc only the claim made by Chambers that his Fourth Amendment rights were violated by the search of the Ashby Street house, and that the evidence seized therefrom should be suppressed. The remaining conclusions and holdings of the panel are unaffected by this order.

The Petition for Panel Rehearing filed on behalf of John Joe Guerrero is DENIED.

of consent is "'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *See Florida v. Jimeno*, — U.S. —, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991) (citations omitted).

5. *See supra* note 2.

6. Record at 25 (cross-examination of Agent Nigel Brooks):

   Q: But my question is: did you feel like you had probable cause to believe that?
   A: I think that at that particular point, yes. I probably did have probable cause, but that would have been for a magistrate to decide.
   Q: But yet you made no effort whatsoever to take your findings to a magistrate and get a search warrant of any kind, did you?
   A: That's correct.

7. *See, e.g.,* Record at 77 (recross-examination of officer Tony Trumps):

   THE COURT: All right. Given the fact that he had told you that he didn't own the house, although he was staying there, and that he didn't want to sign the form, did you realistically, as an officer with your experience and expertise, perceive any real life limitations on the scope of that search?
   THE WITNESS: No, sir.
   THE COURT: All right. Let me ask you this: On the basis of that oral [consent to] search, but his unwillingness to sign the consent, did you feel that if you wanted to, you had the right to bring fire axes in, for instance, and chop open the walls?
   THE WITNESS: Yes, sir.
   THE COURT: Did you feel that you had the right to disembowel the appliances and look into the minutia of the air conditioners or the stove, the refrigerator, that sort of thing?
   THE WITNESS: Yes, sir.
   THE COURT: In fact, bringing a backhoe or that sort of thing and dig up the backyard or underneath the foundation of the house.
   THE WITNESS: Yes, sir.
   THE COURT: And you felt that you had all of those rights on this consent that he gave you orally, even though he refused to sign the form?
   THE WITNESS: Yes, sir.

8. *The evidence in question consists of ledgers, a money-counting machine, and nearly $1,000,000 in cash.*