United States Court of Appeals
Fifth Circuit

**F I L E D**

May 19, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

No. 04-10618

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

ANTHONY WAYNE CHAMBERS
Defendant-Appellant

Appeal from the United States District Court
For the Northern District of Texas

(6:03-CR-44-ALL-C)

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The defendant, Anthony Wayne Chambers, moved the district court to suppress evidence based on his contentions that: (1) the search warrant used to search his house was unsupported by probable cause and therefore invalid; and, (2) his inculpatory statements and any tangible evidence derived from those statements were the "fruit" of an illegal arrest.  The district court denied the motion

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

to suppress. Chambers pleaded guilty to possession of an unregistered firearm, which was found during the search, reserving the right to appeal the district court's decision on his motion to suppress. We affirm.

## I.   Background

On July 31, 2002, Detective Robinson of the San Angelo Police Department obtained a search warrant for a house located at 1014 North Jackson Street, San Angelo, Texas. Detective Robinson also obtained a search warrant for a red 1992 Ford pick-up truck bearing Texas license plate number 7FK-H90. Both the house and the pick-up truck were owned by Chambers.

The affidavit in support of the search warrant contained the following allegations of fact:

(1) Anthony Wayne Chambers owned the house located at 1014 North Jackson Street and the red pick-up truck with license plate number 7FK-H90.

(2) A reliable confidential informant, who had previously provided truthful information to the affiant officer, told the officer that, on several occasions, the informant had accompanied an anonymous third party to Chambers's house on North Jackson Street for the express purpose of purchasing cocaine from a man named "Wayne."

(3) On each occasion the reliable confidential informant observed the third party enter Chambers's house and return with a substance that the confidential informant recognized as cocaine.

(4) Based on the affiant officer's experience in narcotics investigations, the officer knew that many drug dealers use "middlemen" to distribute drugs in the manner described by the confidential informant.

(5) In response to the information provided by the reliable confidential informant, the police began to conduct surveillance on Chambers's house.

(6) During that surveillance, the police observed the reliable confidential informant arrive at Chambers's house in a vehicle with a third party on several occasions. On each occasion, the officers watched as the third party exited the vehicle, entered Chambers's house briefly, and returned to the vehicle.

(7) Also during the same surveillance period, the police observed the red pick-up truck registered to Chambers parked at the residence. Additionally, the police found pieces of mail in the trash bin at Chambers's house that were addressed to Anthony Wayne Chambers.

Before the search warrants could be executed, Chambers left his house and drove his red pick-up truck to the parking lot of a nearby business.[2] At the time, two police officers were following him in order to maintain their surveillance of his activities. Once the officers were notified that a warrant had issued, the officers stopped Chambers. The officers placed him in the back of a patrol car and transported back to his house, ostensibly to facilitate the search of the house and the vehicle he was driving.

Prior to searching his house, the police officers gave Chambers his <u>Miranda</u> warnings and asked him to make a statement. He told officers that:

1)he shared a bedroom in the home with his wife and that bedroom was the master bedroom;

2) no drugs were in the house other than a 1/4 ounce of

---

[2]Neither party provides the distance between Chambers's residence and the parking lot in question. We assume, based on the parties' arguments, that the parking lot is located more than a few blocks from Chambers's house.

3

marijuana located in a safe in the master bedroom; and,

3) there had been cocaine in the house in the past but that the cocaine belonged to someone else.

Chambers also informed the officers that he had multiple guns and knives in the house and "tried to list all of the places where the weapons were kept." Interviewed separately, Chambers's wife told officers that she and Chambers shared the master bedroom. She also told officers that there was a gun leaning against the wall in that bedroom.

No drugs or firearms were found in the search of Chambers's truck. But in Chambers's house, police officers found, *inter alia*, a fair amount of a substance believed to be cocaine as well as cocaine residue located in multiple zip-loc bags, marijuana, methamphetamine, and a number of firearms. Among the firearms, was a Norinco 7.62x39 rifle that officers found leaning against the wall in the master bedroom of Chambers's house. That rifle had been modified from a semi-automatic to fully automatic. Consequently, the rifle was required to be registered in the National Firearms Registration and Transfer Record under 26 U.S.C. § 5861. Because the rifle was not registered, Chambers was charged in federal district court with possession of an unlicensed firearm.

The State of Texas prosecuted Chambers based on evidence seized in the same search and he was convicted in state court of possession of cocaine. The federal district court in this case sentenced Chambers to 18 months, which was to run concurrently with

4

his state sentence. In accordance with his conditional plea agreement, Chambers timely appealed the district court's ruling on his motion to suppress. While his federal appeal was pending before this Court, the state convictions were overturned by the Texas Court of Criminal Appeals based on its conclusion that the evidence obtained during the search of Chambers's home should have been suppressed because the affidavit undergirding the search warrant did not provide probable cause.

## II. Standard of Review

In an appeal from a district court's denial of a motion to suppress, this court reviews questions of law, such as the sufficiency of the search warrant, *de novo* and the district court's factual findings for clear error.[3] Even though the Texas Court of Criminal Appeals concluded that the search warrant in this case was constitutionally defective thereby requiring a suppression of all the evidence obtained during the search, this court is still required to make an independent inquiry into the reasonableness of the search and seizure conducted in this case.[4]

## III. Analysis and Conclusions

---

[3]See United States v. Portillo-Aguirre, 311 F.3d 647, 651-652 (5th Cir. 2002)(citing United States v. Burbridge, 252 F.2d 775, 777 (5th Cir. 2001)).

[4]United States v. Walker, 960 F.2d 409, 416 (5th Cir. 1992)(citing Elkins v. United States, 364 U.S. 206, 224 (1960)).

This court engages in a two-part inquiry when considering whether the exclusionary rule applies to evidence seized under an allegedly defective search warrant.[5] First, the court determines whether the "good faith" exception to the exclusionary rule applies.[6] If the good faith exception applies, and the case fails to present a novel question of law necessary to guide future action by law enforcement officers, the inquiry is at an end and the district court's ruling on the admissibility of the evidence will be affirmed.[7] Second, if this court determines that the police officers could not have relied on the warrant in good faith, or that the case presents a novel question of law, the court considers whether the warrant was supported by probable cause.[8]

In United States v. Leon, the Supreme Court held that the good faith exception to the exclusionary rule was available when officers reasonably relied on an otherwise facially valid search warrant.[9] An officer's reliance upon an otherwise facially valid search warrant is reasonable when that warrant is supported by more

---

[5]See United States v. Laury, 985 F.2d 1293, 1311 (5th Cir. 1993).

[6]Id. (citing United States v. Leon, 468 U.S. 897 (1984)).

[7]United States v. Cavazos, 288 F.3d 706, 709 (5th Cir. 2002).

[8]Laury, 985 F.2d at 1311 (citing United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992)).

[9]468 U.S. at 922-923.

6

than a "bare bones" affidavit of probable cause.[10]  Here, there is no assertion by Chambers that the warrant in question is otherwise facially invalid.[11]  Accordingly, our resolution of the question of whether the good faith exception applies turns on whether the warrant in question was supported by more than a bare bones affidavit of probable cause.

A bare bones affidavit contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause."[12]  For example, an affidavit is bare bones when the affidavit merely alleges that the police officer "'has cause to suspect and does believe'" that contraband is located on the premises of the place to be searched.[13]  Similarly, an affidavit is "bare bones" when the affidavit alleges merely that police officers "'have received reliable information from a credible person and do believe' that heroin is stored in a

---

[10]Id. at 926; see also Laury, 985 F.2d at 1311 (citing Satterwhite, 980 F.2d at 321).

[11]A search warrant is otherwise facially invalid when the warrant fails to identify, with reasonable specificity, the place to be searched or the thing to be seized.  See Leon, 468 U.S. at 923 ("Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient, i.e., in failing to particularize the place to be searched or the thing to be seized, that the executing officers cannot reasonably presume it to be valid.")(citation omitted).

[12]See Laury, 985 F.2d at 1311 n.23 (citing and quoting Satterwhite, 980 F.2d at 321).

[13]United States v. Brown, 941 F.2d 1300, 1301 n.1 (5th Cir. 1991)(quoting Nathanson v. United States, 290 U.S. 41 (1933)).

home."[14]  While an affidavit containing the mere description of an illegal money order scheme may be conclusory and bare bones, if that affidavit contains other facts corroborating the description of the illegal scheme, that affidavit is not bare bones.[15]

Additionally, an affidavit may rely on hearsay, such as an informant's report, so long as it presents "'a substantial basis for crediting the hearsay.'"[16]  When as here, the court is assessing the credibility of an informant's report, the court examines the informant's veracity and basis of knowledge.[17] Moreover, though an affidavit may lack factual assertions showing direct evidence of a criminal scheme or contraband, the magistrate is permitted to "draw common sense conclusions" from the facts alleged in making a probable cause determination.[18]

In this case, the affidavit sets out more than a mere

---

[14]Brown, 941 F.2d at 1303 n.1 (quoting Aguillar v. Texas, 378 U.S. 108 (1964)).

[15]Brown, 941 F.2d at 1303 n.3.

[16]Illinois v. Gates, 462 U.S. 213, 241-42 (1983)(quoting Jones v. United States, 362 U.S. 257, 269 (1960)).

[17]See id. at 230-33(stating that these two factors are relevant considerations under the "totality of the circumstances" test for valuing an informant's report).

[18]See United States v. Wylie, 919 F.2d 969, 974 (5th Cir. 1990); United States v. Holzman, 871 F.2d 1496, 1510 (9th Cir. 1989) ("Direct evidence linking criminal objects is not required for the issuance of a search warrant. A magistrate need only determine that a fair probability exists of finding evidence.") (citations omitted).

8

conclusory description of Chambers's drug trafficking scheme. The affidavit describes the scheme, including the use of a middleman, which was known by the officer by virtue of his experience in narcotics investigations to be a typical distribution method employed by drug dealers. The affidavit also describes specific instances of the scheme in action, which the affidavit states was personally observed by a confidential informant who the police officer avers "has provided [the officer] with information three times in the past one month, and on each occasion the information provided by the [informant] has proven to be true reliable and correct." Under Fifth Circuit precedent, this assertion is sufficient to establish the confidential informant's veracity.[19] Further, the personal observations of the credible confidential informant provided information upon which the magistrate could have "judge[d] whether the informant had a sufficient basis of knowledge of the operations supposedly being conducted at [Chambers's] house."[20]

Additionally, the affidavit states that the confidential informant told the affiant police officer that a man named Wayne was dealing drugs out of a home located at 1014 North Jackson Street, San Angelo, Texas. While this statement alone would be

_____

[19]See United States v. McKnight, 953 F.2d 898, 905 (5th Cir. 1992)(citing United States v. Jackson, 818 F.2d 345, 348 (5th Cir. 1987)).

[20]McKnight, 953 F.2d at 905(citing Jackson, 818 F.2d at 349).

conclusory and bare bones,[21] the affidavit also states that the informant based this statement on factual circumstances that the informant personally observed.

Furthermore, the affidavit demonstrates that the police were able to independently verify that a man named Wayne lived at 1014 North Jackson Street, San Angelo, Texas, which corroborated the information provided directly to the police from the confidential informant and the information provided indirectly by the anonymous third party. The police also subjected that location to surveillance for nearly a month and observed three of the alleged drug deals as they occurred, which also tended to corroborate the information provided by both the confidential informant and the anonymous third party. That the officers corroborated several pieces of the information provided by both the anonymous third party and the confidential informant tends to demonstrate the information's reliability.[22] Contrary to Chambers's assertions,[23] there is no requirement that all of the information provided by an

---

[21]See United States v. Kolodziej, 712 F.2d 975, 977-78 (5th Cir. 1983)(finding an affidavit to be bare bones wherein informants merely stated that a crime occurred and stated where contraband could be found).

[22]See Jackson, 818 F.2d at 348.

[23]Chambers takes issue with the fact that no one other than the anonymous third party actually saw Chambers exchange drugs for the third party's cash, and he contends that the anonymous third party could have had the drugs he showed to the confidential informant prior to entering Chambers's home.

10

informant be corroborated by a subsequent police investigation in order for the informant to be considered credible.[24] Therefore, given all of the facts alleged in the probable cause affidavit and the corroborated reliability of the information provided by the confidential informant and the third party, we conclude that this affidavit is not bare bones and that the police relied on the search warrant in good faith. Consequently, as this case presents no novel question of law, we need not consider whether the affidavit established a substantial basis for the magistrate's probable cause determination and we affirm the district court's admission of the evidence seized during the search of Chambers's house.[25]

In addition to his warrant-based challenge to the admission of the evidence found during the search of his home, Chambers argues that he was unlawfully detained in the store parking lot and that his later statements and all other physical evidence derived therefrom, including the firearm he was convicted for possessing, should be suppressed as the fruit of that unlawful detention. Though the Government and Chambers never expressly state that Chambers was arrested in the parking lot, our review of the undisputed facts and Texas law reveals that he was actually arrested and that the arrest was complete long before the officers "escorted

_____

[24]See United States v. Blount, 123 F.3d 831, 836 (5th Cir. 1997)(en banc).

[25]Cavazos, 288 F.3d at 709.

11

Chambers back to his residence where he was read his Miranda warnings."

Under Texas law, an arrest is complete whenever a person has been "actually placed under restraint or taken into custody by an officer."[26] Critical to this determination is a finding that the defendant is "under restraint" and within an officer's "custody and control."[27] In this case, both parties agree that officers stopped Chambers in the parking lot and placed him in the back of a patrol car that they had summoned to transport him to his house. Thus, there is little doubt that Chambers was within the officers' custody and control in the parking lot. Accordingly, Chambers was arrested in that parking lot.

Given that the Government does not contend that the officers had probable cause or a warrant to arrest Chambers in the parking lot, there is no doubt that the parking lot arrest was illegal, and any statements derived as fruit of that arrest should have been suppressed.[28] The fact that the statements followed Chamber's receipt of Miranda warnings does not alter the analysis.[29]

---

[26]See TEX. CODE CRIM. PRO. § 15.22 (2004).

[27]See Whiting v. State, 755 S.W.2d 938 (Tex. App. 1988); Hardinge v. State, 500 S.W.2d 870 (Tex. Crim. App. 1973).

[28]See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).

[29]Brown v. Illinois, 422 U.S. 590, 601-02 (1975)(holding that the administration of Miranda warnings after the occurrence of a Fourth Amendment illegality and before the defendant's admission

12

Moreover, facts similar to those that justified reasonable detentions in Michigan v. Summers[30] and United States v. Cavazos[31] are not present here. Unlike the defendant in Summers, Chambers was not in his house. As a consequence, Chambers's detention in this case could not have facilitated the search of that house.[32] Additionally, Chambers did not engage in counter-surveillance of the police or pose a threat to the police as was the case in Cavazos.[33] While Chambers's reasonable detention in the parking lot would have facilitated the search of his pick-up truck in the lot, the Government has articulated no legitimate reason justifying the police officers' decision to: (1) call a marked patrol car; and (2) transport Chambers in that patrol car for more than a few blocks back to his house in order to facilitate the officers' search of both the truck and the house. Other circuits have held that, without other extenuating circumstances, a distance of one block or three blocks is too remote to justify a detention while a search warrant is being executed,[34] thus a distance in excess of a few

_____

does not, alone, purge the taint of a Fourth Amendment violation); United States v. Miller, 608 F.2d 1089, 1102-03 (5th Cir. 1998).

[30]452 U.S. 692 (1981).

[31]288 F.3d 706 (5th Cir. 2002).

[32]Summers, 452 U.S. at 700-01.

[33]288 F.3d at 711-12.

[34]See, e.g., United States v. Edwards, 103 F.3d 90, 93-94 (10th Cir. 1996); United States v. Sherrill, 27 F.3d 344, 346 (8th Cir.

13

blocks is too remote as well.

But even if Chambers's statements should have been suppressed, it is unlikely that the firearm, or for that matter, any contraband found in plain view during the execution of the search warrant, should also be suppressed. The firearm was discovered leaning against the wall in the master bedroom of Chambers's house. As discussed above, the police had a valid search warrant for the house. Furthermore, that valid search warrant was obtained before the illegal parking lot arrest and the warrant application was based entirely on information unrelated to Chambers's statements or the arrest. Thus, despite the fact that the actual search of the house and seizure of the firearm occurred almost immediately after the illegal parking lot arrest, the firearm and all other contraband are not subject to the exclusionary rule because of a combination of the independent source doctrine and the inevitable discovery doctrine.[35] These two doctrines, which are admittedly not argued by either party, are "two sides of the same coin.[36]

The independent source doctrine applies when evidence is "initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted

_____

1994).

[35] See United States v. Grosenheider, 200 F.3d 321, 327–28 (5th Cir. 2000).

[36] Id. at 328 n. 8.

14

by the initial illegality."[37]  One of this Circuit's most recent analyses of the independent source doctrine was its decision in United States v. Grosenheider.[38]

In Grosenheider, a computer repair shop discovered child pornography on a customer's computer and notified the police.[39]  A police officer then conducted an illegal search and seizure of the computer, later returning it to the repair shop.[40]  Notified by the police, a federal officer obtained a warrant based on an affidavit recounting what the civilian computer shop employee had seen without informing the judge of information gleaned from the police officer's illegal search.[41]  The judge found probable cause for a search warrant based on the untainted information.[42]  The police then followed the suspect's wife home from the repair shop, where she had picked up the computer, and executed the warrant.[43]  We held that the information on the computer was admissible based on the search and seizure pursuant to that warrant under the independent source

---

[37]Id. (quoting Murray v. United States, 487 U.S. 533, 537 (1988)).

[38]Id.

[39]Id. at 324.

[40]Id.

[41]Id. at 324–25.

[42]Id. at 325.

[43]Id.

15

doctrine.[44]

The inevitable discovery doctrine applies where the government establishes, by a preponderance of the evidence, "(1) a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of the police misconduct and (2)that the government was actively pursuing a 'substantial alternate line of investigation at the time of the constitutional violation.'"[45] In fact, this Court held in United States v. Lamas that when officers have probable cause to search, and have dispatched a fellow officer to acquire a warrant, evidence found in the place to be searched will inevitably be discovered.[46]

In this case, the Government did more than just send an officer for a warrant prior to conducting the searches of Chambers's house and vehicle. Not only did the officers obtain a valid warrant, that warrant was obtained prior to the illegal parking lot arrest and was based on evidence independent of Chambers's post-arrest statements. Based on these circumstances, we conclude that there is "a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of the police

---

[44]Id. at 330.

[45]United States v. Lamas, 930 F.2d 1099, 1102 (5th Cir. 1991)(quoting United States v. Cherry, 759 F.2d 1196, 1205-06 (5th Cir. 1985)).

[46]930 F.2d at 1102.

16

misconduct."[47] Additionally, the existence of that warrant clearly indicates that the Government "was actively pursuing a 'substantial alternate line of investigation at the time of the constitutional violation.'"[48] Consequently, the firearm in question, along with all of the other contraband seized from Chambers's home, would have been inevitably discovered by the police.

Of course, had the firearm been discovered in some place where the police were unlikely to search or that was beyond the scope of the warrant, Chambers might have a better argument that the statements he made while illegally arrested tainted the search and seizure.[49] Though the parties never expressly indicate the content of Chambers's statements, the record reveals that Chambers did at least attempt to tell the police where his weapons were kept. But the firearm in question was discovered in Chambers's house, propped against the wall in the master bedroom where he and his wife slept. Thus, the firearm was unlikely to have been overlooked by the police, even in the absence of Chambers's statements. Accordingly, even if Chambers's statements may have been properly suppressed, the firearm, drugs, or other contraband discovered pursuant to the

---

[47]Id.

[48]Lamas, 930 F.2d at 1102(quoting Cherry, 759 F.2d at 1205-06).

[49]See United States v. Cannon, 981 F.2d 785, 789 (5th Cir. 1993)(discussing whether ephedrine discovered stored in a tire inner tube on a ranch being searched under a valid warrant was inadmissible because police would not have found it without the use of statements obtained in violation of Edwards).

17

search warrant should not be suppressed.

Chambers's guilty plea is conditional. Under Federal Rule of Criminal Procedure 11(a)(2), "a defendant who prevails on appeal" may withdraw his conditional guilty plea. The plain language of the federal rule and the terms of the plea agreement here make clear that had Chambers been fully successful on appeal, as opposed to only partially so, he would be entitled to withdraw his plea. But here we conclude that the vast majority of the evidence challenged in Chambers's motion was properly admitted by the district court. The parties have failed to cite any authority, much less argue, that Chambers's partial success on appeal is sufficient to allow him to withdraw his conditional guilty plea.

In United States v. Leake,[50] the Sixth Circuit observed that the inquiry before the court in cases where a defendant only partially prevails on appeal "requires an examination of the degree of success and the probability that the excluded evidence would have had a material effect on the defendant's decision to plead guilty."[51] In Leake, the Sixth Circuit permitted a partially prevailing defendant to withdraw his conditional guilty plea based on its conclusion that the most damning evidence against the

---

[50] 95 F.3d 409 (6th Cir. 1996).

[51] 95 F.3d at 420 n.21.

18

defendant should have been suppressed.[52]

In contrast, Chambers's statements, many of which the search proved inaccurate, clearly are not the most damning evidence against him in this illegal gun possession case. Because the admissible evidence readily establishes the fact of possession and we have been apprised of no argument to the contrary, we conclude that suppressing rather than admitting the excludable evidence would not have had a material effect on Chambers's decision to plead guilty.

Accordingly, the ruling and judgment of the district court is AFFIRMED.

---

[52]Id. at 420.