

# NUMBER 13-22-00525-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MICHAEL CHAD WILSON,                                    Appellant,

v.

THE STATE OF TEXAS,                                    Appellee.

## On appeal from the County Court at Law
## of Navarro County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Justice Peña**

Appellant Michael Chad Wilson appeals his conviction for manufacture or delivery

of a substance in penalty group 1, four grams or more but less than 200 grams, a first-

degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d).[1] Wilson pleaded guilty to the offense charged in the indictment, reserving the right to appeal a prior denial of a motion to suppress evidence by the trial court. After accepting his guilty plea, the trial court sentenced Wilson to five years' imprisonment. In his sole issue, Wilson argues that the trial court erred in denying his motion to suppress evidence. We affirm.

## I.    BACKGROUND

A grand jury indicted Wilson with one count of manufacture or delivery of a substance in penalty group 1, four grams or more but less than 200 grams, a first-degree felony. *See id.* Wilson's arrest was the result of a search of a residence in Barry, Texas, pursuant to a warrant, in which he was an overnight guest. The affidavit filed in support of the search warrant provides that affiant detective Michael Worthy of the Corsicana Police Department has been a police officer for approximately five years and has experience in narcotics investigations. Worthy averred that law enforcement had been conducting surveillance of the residence "due to receiving information of narcotics being sold at the location." Worthy stated that he also received information that two wanted subjects, Christopher Nash and Travis Vogel, lived at the residence. Worthy explained that he is "familiar" with the residence "due to receiving information" that Nash and another individual, Teresa Bartlett, had been "selling narcotics" "in the recent past[.]" Worthy stated that he personally "conducted recent surveillance" on the residence "and observed vehicles coming to the residence for a short amount of time and leaving." Worthy further

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

stated that he had "knowledge of . . . Nash and . . . Bartlett along with multiple subjects stating that they are narcotics dealers," and that he "is also familiar with the named subjects due to recent information and their extensive criminal history involving narcotics." According to the affidavit, law enforcement observed a vehicle owned by Bartlett leaving the residence, and a traffic stop was conducted after the driver, later identified as Nash, failed to signal before turning. Worthy averred that after the traffic stop, passenger Amber O'Daniel admitted to having drugs on her person and advised him that "Nash had handed her the narcotics stating he was going to jail and to hide it." O'Daniel had two small baggies containing methamphetamine on her person and one baggie in her purse, weighing a total of 3.2 grams.

Wilson filed a motion to suppress evidence arguing that there was no probable cause to support issuance of the search warrant. The trial court entertained the motion by submission and denied it without entering findings of fact.[2] Wilson pleaded guilty to the offense charged in the indictment. After a hearing, the trial court found Wilson guilty, sentenced him to five years' imprisonment, and certified his right to appeal. This appeal followed.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019); *State v. Patel*, 629 S.W.3d 759, 764 (Tex. App.—Dallas 2021, no pet.). We give almost total deference to a trial court's rulings on questions of historical fact and mixed questions of

---

[2] The record only contains a letter sent by the trial court to counsel announcing its decision to deny the motion, saying that it would sign a proposed order once submitted. There is no formal order denying the motion in the record before us.

3

law and fact that turn on an evaluation of credibility and demeanor. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). But we review de novo mixed questions of law and fact that do not turn on credibility and demeanor. *Id*. When the trial court makes no explicit findings of facts, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

The Fourth Amendment of the United States Constitution mandates that a warrant cannot issue "but upon probable cause" and must particularly describe the place to be searched and the persons or things to be seized. U.S. CONST. amend. IV. The core principle of this clause and its Texas equivalent is that a magistrate cannot issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (first citing U.S. CONST. amend. IV; and then citing TEX. CONST. art. I, § 9); *see* TEX. CODE CRIM. PROC. ANN. art. 18.01(b), (c). "Typically, the warrant process involves presenting to a neutral and detached magistrate an affidavit that establishes probable cause to conduct a search." *Patterson v. State*, 663 S.W.3d 155, 158 (Tex. Crim. App. 2022) (citing *Jones v. State*, 364 S.W.3d 854 (Tex. Crim. App. 2012)).

"Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location" at the time the warrant is issued. *Id.* (citing *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007)). "This is a flexible, non-demanding standard." *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022); *see Florida v. Harris*, 568 U.S. 237, 243–44 (2013) ("Finely tuned standards such as proof beyond a reasonable doubt or by a

4

preponderance of the evidence have no place in the probable-cause decision. All we have required is the kind of 'fair probability' on which reasonable and prudent people, not legal technicians, act." (cleaned up)).

Where a residence is searched, a warrant affidavit must establish a nexus between the residence to be searched and the evidence sought. *United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996) (citing *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)). "That nexus may be established, however, by direct observation or through normal inferences as to where the articles sought would be located." *Id*. (citations omitted). "Moreover, though an affidavit may lack factual assertions showing direct evidence of a criminal scheme or contraband, the magistrate is permitted to 'draw common sense conclusions' from the facts alleged in making a probable cause determination." *United States v. Chambers*, 132 F. App'x 25, 30 (5th Cir. 2005).

In assessing whether a search warrant is supported by probable cause, we are constrained to the four corners of the supporting affidavit. *Baldwin*, 664 S.W.3d at 130 (citing *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011)). Our duty is to "ensure a magistrate had a substantial basis for concluding that probable cause existed." *Id.* In conducting our review, we give great deference to the magistrate's determination, including a magistrate's implicit findings. *Id.* (citing *McLain*, 337 S.W.3d at 271–72). "When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made." *Id*. (citing *Rodriguez*, 232 S.W.3d at 61). We should "not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner." *Id.* Accordingly, the "'substantial basis' standard of review 'does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision

should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'" *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (quoting W. LaFave*, Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(c) at 452 (4th ed. 2004 & Supp. 2009–2010)).

## III. DISCUSSION

Wilson complains that the affidavit here was insufficient to support probable cause for the following reasons: Worthy failed to provide sufficient information about his unnamed sources; Worthy failed to sufficiently detail his training and experience; Worthy failed to sufficiently corroborate the information he received; and Worthy provided insufficient information establishing a nexus between the drugs seized during the traffic stop and the residence searched.

## A. Insufficient Information

Although Worthy's affidavit could have been more detailed about his training and experience, the source and nature of the information he received, or his attempts to corroborate such information, when reviewing the sufficiency of a search warrant affidavit "[t]he proper analysis . . . is not whether as much information that could have been put into an affidavit was actually in the affidavit." *Rodriguez*, 232 S.W.3d at 63–64 (noting that because of the time-sensitive nature of criminal investigations, a law enforcement officer cannot be expected to "compose a polished document that 'dot[s] every i and crosse[s] every t'"). Rather, "we are obliged to defer to the magistrate and uphold his determination based upon all reasonable and commonsense inferences and conclusions that the affidavit facts support." *Id*.; *see Davis v. State*, 202 S.W.3d 149, 156 (Tex. Crim. App. 2006) (faulting the court of appeals for failing to properly apply the substantial basis

6

standard because it erroneously held that "it was improper to infer experience, proximity to a residence, length of time spent outside a residence, or anything else that would show the reliability of an officer's suspicion from [the affiant]'s statement"); *McLain*, 337 S.W.3d at 274 (faulting the court of appeals for choosing "the 'hurried' words of the officer over reasonable inferences that the magistrate could have made"). Such inferences may include inferring the requisite training and experience of a law enforcement affiant. *See Martin v. State*, 620 S.W.3d 749, 766 (Tex. Crim. App. 2021) (finding probable cause to search residence because it was reasonable for magistrate to infer that a law enforcement officer is generally able to "distinguish between innocent behavior and criminal drug activity" and can recognize "drug paraphernalia and signs of drug activity").

As to Wilson's suggestion that the information from unnamed sources was insufficiently detailed to support probable cause, there is no requirement that information from a confidential source needs to establish the source's basis for knowledge, veracity, or reliability before courts can properly consider it as part of the probable cause determination. *See Illinois v. Gates*, 462 U.S. 213, 228 (1983). Rather, an informant's knowledge, veracity, and reliability "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id*. at 230. Further, Wilson's argument that the information provided from confidential sources was not sufficiently corroborated is misplaced; it was the totality of the investigation, including the surveillance conducted and the drugs seized during the valid traffic stop, that formed the basis for the search warrant, not any unnamed source's hearsay statements. *See State v. Hill*, 299 S.W.3d 240, 244 (Tex. App.—Texarkana 2009,

7

no pet.) ("Hearsay from unnamed informants may be credited by showing the informant has given reliable, credible information in the past. . . . Nevertheless, the absence of an allegation of prior reliability is not necessarily prohibitive to a finding of probable cause if the informant's information is otherwise corroborated within the four corners of the affidavit." (citation omitted)); *Duarte*, 389 S.W.3d at 355 (finding no probable cause where the "affidavit [was] based almost entirely on hearsay information supplied by a first-time confidential informant" and law enforcement only corroborated the information by confirming the defendant's address).

Accordingly, we review Wilson's claim based on the totality of circumstances presented to the magistrate and ask whether the magistrate had a substantial basis for finding probable cause. *Rodriguez*, 232 S.W.3d at 64. "It is not necessary to delve into all of the facts that were omitted by the affiant, facts that could have been included in the affidavit, or contrary inferences that could have been made by the magistrate." *Id.*

## B.  Nexus Between Residence & Drugs Seized

To support probable cause, an affiant is not required to assert that he has direct evidence linking seized drugs to a larger store of drugs located in a residence. *See Chambers*, 132 F. App'x at 30. The nexus can also be established through "normal inferences as to where the articles sought would be located." *Broussard*, 80 F.3d at 1034 (citations omitted).

The Fifth Circuit has recently noted that where a defendant is suspected of drug trafficking, an affidavit will usually suffice to establish probable cause where there are "observations connecting a defendant's drug trafficking to a particular location," and the facts warrant reliance on "inferences regarding the tendencies of drug traffickers to keep

8

contraband in their residences[.]" *United States v. Bell*, 832 F. App'x 298, 302 (5th Cir. 2020) (collecting cases); *see United States v. Whitner*, 219 F.3d 289, 297–98 (3rd Cir. 2000) ("In the case of drug dealers, a number of other courts of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside." (collecting cases)). The Fifth Circuit has also previously found a sufficient nexus to establish probable cause where a suspected drug trafficker was observed leaving a residence, drugs were then seized from the suspect as part of a traffic stop, and there were otherwise no other factual links connecting the seized drugs to the residence. *See United States v. Aguirre*, 664 F.3d 606, 613–14 (5th Cir. 2011) ("The affidavit provided a nexus between Mendoza's drug activities and his home, establishing a likelihood that Mendoza's home would contain evidence of criminal activity. It recited that Mendoza was under surveillance by the DEA and had been arrested for carrying 'substantial amounts of cocaine' and marijuana in his car immediately after leaving his residence and that [the affiant]'s experience as an investigator confirmed that drug dealers are likely to keep records of their trafficking activities in their homes.").

Similarly, in *Rodriguez*, an experienced narcotics officer received a tip from an informant that the defendant's uncle Eduardo Cantu was selling large amounts of cocaine. 232 S.W.3d at 57. Officers conducted surveillance, followed Cantu to defendant's home, observed Cantu go into the garage and exit with a package in his right hand, observed him throw the package into his backseat, conducted a traffic stop, and seized three brick-like objects of putative cocaine. *Id*. The Texas Court of Criminal of Appeals noted that

> it does not distort common sense or read additional facts into the affidavit to infer from this information that there were more drugs located at [appellant's] garage. Although it is possible that there were really two different packages—one containing cocaine that had been in Cantu's car

9

all along and another, innocuous package that Cantu carried with him out of appellant's garage—that scenario is based entirely upon speculation as no second package was mentioned in the affidavit. And, although it is entirely possible that Cantu took all of the cocaine stored at the garage with him when he left, it is at least as likely that the three kilo package was just a small part of the whole cache.

*Id.* at 64 (citations omitted); *see Flores*, 319 S.W.3d at 703 (finding it reasonable to infer that drug residue from a trash receptable found in front of a defendant's home on two separate occasions "originated" from the home, absent any direct evidence). As the court found, even though it was possible that there were no drugs left in the appellant's home, it was "reasonable to conclude that where there was smoke (the original three-kilo package of cocaine) there was fire (a larger cache of cocaine)." *Id*. at 63.

Here, the affidavit sufficiently alleged that law enforcement had independently come to suspect that Nash was engaged in drug trafficking and that he lived in the residence. *See United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (finding that, in order to rely on the inference that defendants are likely to store evidence of involvement in the drug trade where they reside, an affidavit must contain the "independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes"); *cf. United States v. Underwood*, 725 F.3d 1076, 1083 (9th Cir. 2013) ("Here, the affidavit . . . provides no *facts* to support the conclusion that Underwood is in the business of buying and selling ecstasy. Moreover, the affidavit does not even assert that Underwood is a drug trafficker. Instead, the affidavit describes Underwood as a 'courier.'" (emphasis in original)). Thus, based on the drugs seized in the vehicle driven by Nash, a suspected drug trafficker, it was reasonable for the magistrate to have inferred that more drugs would be found where Nash was suspected of residing. *See Bell*, 832 F. App'x at 302; *Aguirre*, 664 F.3d at 613–14.

10

Further, direct observation of the transfer of the package from the residence to the car is not required where, as here, law enforcement had already come to suspect that drug traffickers were using this particular location to sell drugs, and impliedly to store them. *See Rodriguez*, 232 S.W.3d at 63 (finding probable cause even though defendant, whose home was searched, was not himself suspected of drug dealing, because "it is certainly 'a fair probability' that there was more cocaine stored where the first package came from"); *see also Flores*, 319 S.W.3d at 703 (finding probable cause where there was no direct evidence linking drugs to the defendant's residence, nor any observations by law enforcement of defendant possessing or otherwise being in the proximity of any drugs).

Based on the totality of the circumstances, we conclude that the facts in the affidavit, together with the reasonable inferences to be drawn from them, were sufficient to show that there was a "fair probability" that evidence of drug trafficking would be found in the residence, and the magistrate had a "substantial basis" for concluding that such a probability existed. *See Bell*, 664 S.W.3d at 130; *Aguirre*, 664 F.3d at 613–14.

For the foregoing reasons, we overrule Wilson's sole issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
16th day of November, 2023.